# IN THE COURT OF APPEALS OF IOWA

No. 22-0386
Filed August 30, 2023

**JASON LEROY HUDDLESTON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Tamra Roberts, Judge.

Jason Huddleston appeals the denial of his application for postconviction relief. **AFFIRMED.**

Joseph C. Glazebrook of Glazebrook Law, PLLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., Buller, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**MULLINS, Senior Judge.**

Jason Huddleston appeals the denial of his application for postconviction relief (PCR). He argues the court "improperly denied the PCR application because it failed to order the department of corrections [(DOC)] to calculate [his] sentence as a Category A offense" for earned-time purposes. *See* Iowa Code § 903A.2(1) (2018). Alternatively, he argues he is entitled to relief because his "guilty plea was premised on a false impression of the prospective sentence rendering it involuntary and unknowing" and his criminal attorney was ineffective in relation to his plea.

## I.      Background

### A.      Criminal Proceeding

Huddleston pled guilty to third-or-subsequent domestic abuse assault. *See id.* § 708.2A(4). In April 2019, the court sentenced him in accordance with the terms of the plea agreement—five years in prison, with a mandatory minimum of one year and credit for time already served. *See id.* §§ 902.13 (mandatory minimum), 903A.5(1) (credit).[1]

In June 2020, Huddleston file a "motion for resentencing," stating that despite the mandatory minimum of only one year, "[t]he [DOC] has listed the sentence as 85% of time to be served." He argued he "needs to be resentenced to reflect the court's intention for the one year mandatory minimum." In its resistance, the State pointed out that the Iowa Board of Parole (IBOP) is the arbiter

---

[1] Huddleston states "the sentencing order was flawed," because it cited section 902.1(3) instead of section 902.13 for the mandatory minimum. This was obviously a scrivener's error. Indeed, in a subsequent order, the court noted the "section for the mandatory minimum was erroneously entered in the sentencing order as 902.1(3) and should be correctly stated as 902.13."

of parole decisions and has discretion to select a term anywhere from the one-year mandatory minimum up to the five-year indeterminate term. In a supplemental resistance, the State added the sentence could not be reconsidered or reopened.

The matter proceeded to a hearing.[2] In its ensuing ruling, the court explained Huddleston was only seeking clarification of his sentence, not reconsideration. In response to Huddleston's claim that the DOC was "subjecting him to a mandatory minimum sentence of 85%," the court simply explained the sentence imposed involved only a one-year mandatory minimum.

### B. PCR Proceeding

In August, Huddleston filed his PCR application. In an attachment to his application, he explained that, in May 2020, his case manager told him he had "to serve 85%." Despite the order clarifying his sentence, discussed above, Huddleston still believed he was going to be required to serve an 85% mandatory minimum. In an amended application, court-appointed counsel argued the State violated the plea agreement and the sentence was not part of the plea agreement. In its answer, the State denied these allegations and argued that, because the one-year mandatory minimum had now expired, when Huddleston was granted parole or work release was solely up to the IBOP. So the State requested dismissal for failure to state a claim upon which relief could be granted.

---

[2] We are without a transcript for this hearing, although it was reported, as is evidenced by a court reporter memorandum and certificate. While the underlying criminal record automatically becomes part of the record of a PCR proceeding under section 822.6A, litigants on appeal must still use the combined certificate to order transcripts following a notice of appeal. *See* Iowa Rs. App. P. 6.803(1), .804(2).

Huddleston filed a second amended application in October 2021. While he agreed he was granted parole by that point, he argued the DOC "illegally imposed a mandatory minimum sentence upon" him beyond what the court imposed in its sentencing order, in violation of separation-of-powers. In other words, he claimed that the DOC unconstitutionally imposed a requirement that he serve 85% of his total sentence before he could be eligible for parole or work release. At the same time, however, he implicitly agreed he served far less than the alleged mandatory minimum imposed by the DOC before he was granted parole. The State likewise moved to dismiss the amended application, pointing out that if the DOC had done what was alleged, then Huddleston would still be in prison.

A PCR hearing was held in February 2022. Huddleston presented testimony from an executive officer of the DOC. This witness specifically testified she is not trained in the DOC's time-computation practices, nor did she have any involvement with Huddleston's time computation. But in looking at his time computation sheet,[3] she gathered that "[h]e was sentenced to a domestic abuse charge, 85 percent. When his time comp was done in 2019, he had a mandatory minimum of November 10th of 2019 and a discharge date of March 8th of 2023."[4] While the witness believed "that he has to serve 85 percent of his sentence before he's eligible for release consideration," she explained on cross-examination that she had no idea whether it would be 85% of the mandatory minimum or the total

---

[3] This document was not admitted as evidence.

[4] The mandatory minimum date of November 10, 2019 would be consistent with the district court's imposition of a one-year mandatory minimum with credit for time served, since Huddleston was originally arrested exactly one year prior to that date and remained in jail until he was sent to prison.

indeterminate sentence. In summary, this witness had little knowledge, if any, about Huddleston's time computation.

Huddleston himself testified that roughly a year after he was sentenced, he received a time-computation sheet and "found out [he] had 85 percent." He decided to speak to his case manager, who told him this was because of "a law that happened in 2017." Based on this, Huddleston had his attorney file the motion for resentencing in June 2020, discussed above. After Huddleston learned the outcome of that motion was that the court was "leaving it in the hands of the DOC," he filed his PCR application. Huddleston's main complaints in his testimony seemed to be that (1) he believed the time he served in jail before he went to prison did not count toward his mandatory minimum and (2) the DOC should not have been able to hold him any longer than the one-year mandatory minimum imposed by the court. He submitted that if he knew anything about the potential for having to serve 85% of his total sentence, then he would have not pled guilty and would have proceeded to trial. His request for the court was to discharge him from parole.

In its ruling, the court found "[t]he math just does not support [Huddleston's] arguments" that the DOC subjected him to an 85% mandatory minimum, pointing out that Huddleston was incarcerated for a total of 980 days, and if an 85% mandatory minimum was indeed imposed he would have been required to serve 1551 days. The court attributed the confusion to earned-time calculations, noting Huddleston's sentence was likely a Category "B" sentence under section 903A.2(1)(b), which is "subject to a maximum accumulation of earned time of fifteen percent of the total sentence of confinement," thus resulting in a maximum reduction for good conduct to 85%. The court also noted it was not surprised

Huddleston was not granted parole after the mandatory minimum, given his criminal history.[5]  The court also noted that parole decisions are at the discretion of the IBOP.  Based on the foregoing, the court determined Huddleston was not entitled to relief and denied his application.

Huddleston appeals.

## II.  Standard of Review

We ordinarily review rulings in PCR proceedings for legal error, but our review is de novo when constitutional issues come into play.  *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

## III.  Discussion

### A.  Earned Time

On appeal, Huddleston maintains that "the 85% calculation is a sort of de facto mandatory minimum that was improperly imposed to elongate his sentence which should have otherwise expired."  But deviating from the general position he took below, Huddleston now argues the PCR court improperly "failed to order the [DOC] to calculate [his] sentence as a Category A offense" for earned-time purposes under section 903A.2(1).

As the State points out, Huddleston never requested this as relief in the district court or raised it as an issue.  Nor did he dispute that his sentence fell within Category "B" for purposes of earned-time accrual, either in response to the State's assertions that it did or the district court's adoption of the unchallenged position of the State.  Rather, Huddleston's claim was that the DOC simply decided that he

---

[5] The record discloses Huddleston has eleven convictions for domestic abuse assault.

would have to serve 85% of his total sentence before he was eligible for parole or work release. That clearly wasn't true because he was granted parole well before that alleged mandatory minimum was satisfied. The claim that he is making for the first time now, that the DOC calculated his earned-time credits based on an incorrect categorization, is not preserved. *See, e.g.*, *State v. Dessinger*, 958 N.W.2d 590, 598 (Iowa 2021) (noting a party cannot "raise a new claim or defense on appeal that could have been, but failed to be, raised at trial"); *State v. Brown*, 656 N.W.2d 355, 361 (Iowa 2003) (noting error-preservation doctrine requires first giving the district court the opportunity to correct any alleged errors). We will not allow the intricacies of categorical differentials in Iowa Code section 903A.2(1) to be litigated in this case for the first time on appeal.[6]

Aside from our conclusion that Huddleston failed to preserve error, we note the supreme court recently signaled that any conviction subject to the enhanced sentence in section 902.13(1)—like Huddleston's—falls within Category "B" for purposes of earned-time accrual. *See Anderson v. Iowa Dist. Ct.*, 989 N.W.2d 179, 182–83 & n.5 (Iowa 2023). Finally, given the fact that Huddleston discharged his sentence while this appeal was pending, this issue is moot.[7] *See*

---

[6] While it's true that challenges to sentences as illegal are immune to error-preservation defects, that immunity only extends "to those cases in which a trial court has stepped outside the codified bounds of allowable sentencing" or "the sentence is illegal because it is beyond the power of the court to impose." *Tindell v. State*, 629 N.W.2d 357, 359 (Iowa 2001) (citation omitted). Here, there is no claim that the district court stepped out of bounds in sentencing or exceeded its jurisdiction, so that exception to the error-preservation rules does not apply.

[7] In March 2023, the State filed a motion to dismiss the appeal as moot due to the recent discharge of Huddleston's sentence and Huddleston's requested relief on this issue being discharge of his sentence. In his resistance, Huddleston agreed he discharged his sentence but resisted dismissal on the basis that he was also challenging his plea. We are inclined to conclude the supreme court denied the

*State v. Johnson*, No. 16-0976, 2017 WL 2684342, at *2 (Iowa Ct. App. June 21, 2017) (collecting cases).

### B.    Guilty Plea

Alternatively, Huddleston argues he is entitled to relief because his "guilty plea was premised on a false impression of the prospective sentence rendering it involuntary and unknowing" and his criminal attorney was ineffective in relation to his plea.  But Huddleston did not specifically raise these claims in the PCR proceeding.  As the district court noted in its ruling, "[o]nly one issue was presented to the court in this case," that being that the DOC improperly applied an 85% mandatory minimum sentence.  And to the extent Huddleston did raise claims about his plea or the effectiveness of his counsel, which he didn't, the district court did not rule on them.  So error is not preserved here either.  *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised *and* decided by the district court before we will decide them on appeal." (emphasis added) (quoting *Meier v.*

---

motion to dismiss the entire appeal for this reason.  As to the earned-time issue, Huddleston argued the issue was not moot because he could pursue collateral relief under Iowa Code section 663A.1, or in an action under 42 U.S.C § 1983, which would require exhaustion of other remedies.  But actions based on wrongful imprisonment under section 663A.1 are not available to individuals who plead guilty.  Iowa Code § 663A.1(1)(b).  And actions under section 1983 relating to deprivation of good-time credits are not subject to an exhaustion requirement.  *See Edwards v. Balisok*, 520 U.S. 641, 649 (1997).  To the extent Huddleston would need to prove his conviction or sentence is invalid through one of various ways in order to recover damages in a section 1983 action, *see Heck v. Humphrey*, 512 U.S. 477, 487–88 (1994), that contemplates whether a claim is cognizable, not whether a particular remedial step must be exhausted.

So these reasons do not save this issue from being moot.  We also note that while federal habeas corpus indeed requires exhaustion, that remedy is only available to a person in custody.  *See* 28 U.S.C. § 2254.

*Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002))). Assuming the issues were properly raised, the proper procedure to preserve error was to file a motion raising the court's failure to decide them prior to appealing. *See id.* ("When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." (citation omitted)). We decline to consider these issues for the first time on appeal.

## IV. Conclusion

Finding Huddleston is not entitled to any relief on appeal, we affirm.

**AFFIRMED.**